UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SHANE CHILDERS, § | | |
|     Plaintiff § | | |
| § | | |
| V. § | | Civil No. CC-08-338 |
| § | | |
| WILLIAM L. BATES, ET AL., § | | |
|     Defendants § | | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is a prisoner civil rights case alleging deliberate indifference to the plaintiff's medical needs. *Pro se* Plaintiff Christopher Shane Childers claims that on March 11, 2007, at 7:00 a.m. he was discovered lying in his cell bed, perhaps on his cell floor, nude, unconscious, and covered in his own feces. It is undisputed that Plaintiff did not receive any medical attention until 1:04 p.m. when he finally arrived by gurney at the prison's emergency room. On March 28, 2007, Plaintiff underwent a craniotomy to remove a subdural hematoma in his brain. He now sues various prison security and medical personnel for being deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. *See* 42 U.S.C. §1983.[1]

Defendants William Bates, Jennifer Quintana, Martha Rodriguez, Juan Jose Quintero, Billy Garza, Ameliano Gonzales, and Michael Fuentes's move for summary judgment that they are entitled to qualified immunity. *See* D.E. 44. They contend the facts alleged by Plaintiff fail to state a constitutional violation against them. The United States Magistrate Judge recommends the Court grant Defendants' motions. *See* D.E. 76. Plaintiff filed objections. *See* D.E. 77. For the reasons

---

[1] The events giving rise to this suit occurred at the McConnell Unit in Beeville, Texas.

1

discussed below, the Court declines to adopt the Magistrate Judge's recommendation and DENIES Defendants' motions.

## I. BACKGROUND FACTS

According to Plaintiff's Complaint,[2] on March 11, 2007, at approximately **7:00 a.m.**, Defendant Ameliano Gonzales ("Gonzales") found Plaintiff "lying in his bed, nude, unconscious and in a fetal position." There were feces on Plaintiff's cell floor, table, and bed. Gonzales told other inmates that he would inform "Sergeant Garza" of Plaintiff's need for medical attention and then left. At approximately **8:00 a.m.**, Gonzales returned to Plaintiff's cell and informed the other inmates that he "had notified the sergeant of the situation and that it was up to the sergeant to get Plaintiff medical treatment." He refused the inmates' request that he notify a higher ranking officer of Plaintiff's condition.

At approximately **8:30 a.m.**, Defendant Michael Fuentes ("Fuentes"), who was assigned as the "picket officer," attempted to rouse Plaintiff but received no response. He told the other inmates that "the sergeant supervising the building had been notified of the situation" and refused their request to notify a higher ranking official of Plaintiff's need for medical attention.

According to his sworn affidavit, Defendant Billy Garza ("Garza"), was notified of Plaintiff's condition by a an unnamed roving correctional officer sometime **between 9:00 a.m. and 10 a.m.** Garza explains:

---

[2] In his Complaint, Plaintiff "declare[s] under penalty of perjury that all facts presented in this complaint and attachment thereto are true and correct." *See* D.E. 1, page 16. Defendants do not object to his proffer.

> I do not know the exact time of these events, but I would assume it was between 9 am and 10 am.  I went over to Childers' cell, and he was confused and on the ground. I called for more staff and we made sure he got onto his bunk.  We were talking to him and he was looking at us but did not say anything.  I told Sgt. Quintero to call medical, which he did.  When I saw Plaintiff was still in his cell some time later, I contacted my supervisor, Jennifer Qunitana, and we contacted medical again. Plaintiff was treated and transferred to the Jester IV Unit.

Garza's testimony is consistent with Plaintiff's allegation that he [Garza] arrived at his cell around **9:30 a.m.**, at which time Plaintiff contends the following took place:

> He [Garza] also stood in Plaintiff's cell doorway and called out to Plaintiff.  Plaintiff did respond momentarily to Defendant [G]arza and attempted to communicate to him that he was suffering from an excruciating headache or head pain.  Defendant Garza indicated to offenders on the section that he had notified medical staff of Plaintiff's need for medical attention, but that medical staff were not being responsive and was questioning whether Plaintiff was suffering a mental "episode" or a seizure.
>
> Defendant Garza questioned offenders about Plaintiff's psychiatric condition and whether Plaintiff had been abusing drugs.  Offenders informed him that Plaintiff had been suffering from a constant and severe headache for several days and had taken large quantifies of Ibruprofen.  Offenders suggested that this may have a bearing on Plaintiff's condition.  Offenders also told him that Plaintiff's condition was unlike anything he had done before and was obviously in need of medical attention.
>
> Defendant Garza agreed that Plaintiff's condition did not appear to be a mental problem.  Offenders asked Defendant Garza to contact a higher ranking officer of Plaintiff's need for medical assistance.  Defendant Garza stated that he would call the medical department again and also contact his supervisor (Defendant Quintana).

At approximately **10:00 a.m.**, Defendant Captain William Bates ("Bates") was notified of "[P]laintiff's need for medical assistance and the obvious unconcern of the security and medical staff."  Around **11:00 a.m.**, Defendant Sergeant Juan Jose Quintero ("Quintero"), who was "working at the 3-building searcher's desk," was notified of Plaintiff's need for medical assistance and asked to contact a supervisor.  According to Plaintiff, Quintero "indicated that Defendant Garza had already notified Lieutenant Quintana of the situation and that nothing more would be done."  At **11:15 a.m.**, Defendants Bates was again notified of Plaintiff's need for medical attention but

3

responded "that he was too busy feeding lunch to obtain medical assistance for 'punk' Plaintiff" and that "he would get assistance when he finished feeding lunch."

The medical call log attached to Defendant Nurse Martha Rodriguez's ("Nurse Rodriguez") sworn affidavit confirms the **medical department received two calls concerning Plaintiff, one at 9:15 a.m. and one at 11:30 a.m.** The call log shows that both calls were made by an unidentified "Caller 3." At 9:15 a.m., the following notes were made concerning Plaintiff: "naked/ dump on floor/ not talking / feces everywhere/ laying back." In response, an unidentified nursing staff member told security to escort Plaintiff to the emergency room.[3] The second call was received by Nurse Rodriguez, who in her sworn affidavit states the following:

> I was told that Offender Christopher Childers was naked, covered in feces and not talking to security personnel. I reported this and he was brought to medical. Although I took the call, I did not treat Childers. Childers was treated by another nurse.

**Shortly after 11:45 a.m.**, Defendants Sergeant Garza, Nurse Rodriguez, and Lieutenant Jennifer Quintana ("Quintana") arrived at Plaintiff's cell. Defendant Quintana called out to him but received no response. After commenting that Plaintiff was "just a psych patient," Nurse Rodriguez said she would "have a gurney sent from medical to take Plaintiff to the infirmary." It is undisputed that Plaintiff **arrived at the emergency room at 1:04 p.m.** He was evaluated by Nurse Rhonda Cubbage at **1:49 p.m.** and was subsequently transferred to the Jester IV Unit, a TDCJ psychiatric

---

[3] *See* the medical call log attached to Nurse Martha Rodriguez's affidavit and Warden N. Jackson's July 12, 2007, written response to Plaintiff' Step 1 Grievance, which provides as follows:

> Medical was notified at 0915 on 3/11/07 of your condition, security was told to escort you to ER. You arrived at emergency room at 1304 and received transfer order to Jester IV at 1404. You were kept at Jester IV as psychological patient until 3/28/07 when correct diagnosis was made. From the time you were escorted to medical until transfer order to Jester IV was one hour. You were treated appropriately and promptly. *See* D.E. 38, page 10-11.

hospital prison unit in Houston, Texas, where he received treatment.

## II.   APPLICABLE LAW

When assessing whether a defendant is entitled to qualified immunity, the court engages in a bifurcated analysis. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (per curiam). First,[4] the Court must ask whether the facts alleged, taken in the light most favorable to the plaintiff, show the defendant's conduct violated a constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). At the summary judgment stage, the first step of the qualified immunity analysis is based on all the evidence before the Court, and not just the pleadings. *Mace v. City of Palestine*, 333 F.3d 621, 624 n.7 (5th Cir. 2003). If the plaintiff alleges the violation of a constitutional right, the Court then asks whether that right was clearly established at the time the events giving rise to suit occurred. *Saucier*, 533 U.S. at 206. In a qualified immunity determination, the facts are construed in the light most favorable to the party asserting the injury. *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Saucier*, 533 U.S. 201).

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed. 2d 271 (1991)). The "deliberate indifference" standard requires a "showing that the official was subjectively aware of the risk [of serious harm to the inmate]." *Easter*, 467 F.3d at 463 (citing

---

[4] In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court held the two-prong sequence set forth in *Saucier*, while often appropriate, is no longer mandatory. District courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson*, 129 S.Ct. at 818.

*Farmer*, 511 U.S. at 829, 114 S.Ct. 1970). "[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Easter*, 467 F.3d at 463 (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). A prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious. *Easter*, 467 F.3d at 463. *See also Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 880 (5th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

### III.   ANALYSIS

Defendants contend Plaintiff's claims are based on the alleged *delay* in treatment. They cite to *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993), for the proposition that an alleged delay in medical care can constitute an Eighth Amendment violation *only* if the plaintiff can show the delay caused substantial harm. *Mendoza*, 989 F.2d at 193. Defendants argue that Plaintiff cannot show that he was substantially harmed by the alleged delay in treatment and has therefore fails to state a claim against them. In the alternative, Defendants contend their actions were objectively reasonable under the circumstances.

The Court disagrees with Defendants. The Court acknowledges the precedent concerning Eighth Amendment claims for *delayed* medical care. However, Defendants conveniently gloss over and fail to address Plaintiff's claim that Defendants *refused* him medical care. In his Complaint, Plaintiff specifically claims Defendants "with deliberate indifference *refused or delayed* Plaintiff medical care for a serious medical condition, resulting in significant injury and/or the unnecessary and wanton infliction of severe pain on Plaintiff." Plaintiff makes two separate claims. *See Easter*,

6

467 F.3d at 464-65.

Construing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has clearly stated an Eighth Amendment claim concerning the "excruciating headache or head pain" he suffered during the over five-hour period of time that Defendants refused to provide him medical treatment.[5] The evidence before the Court demonstrates Defendants, individually and/or collectively, were aware of and disregarded an excessive risk to Plaintiff's health and safety. The factual declarations made by Plaintiff demonstrate that Defendants either witnessed Plaintiff's condition or were notified of it. Given the serious nature of Plaintiff's condition, i.e. the fact that he was naked, unconscious, and covered in his own feces, the Court finds the risk to Plaintiff's health and safety was obvious. Defendants' subjective knowledge of that risk may therefore be inferred. *See Hernandez*, 380 F.2d at 880. What is particularly disturbing to this Court is that Defendants do not dispute the accuracy of Plaintiff's allegations. They do not dispute that Plaintiff's condition was first discovered at 7:00 a.m. or that he did not receive any medical care until 1:04 p.m. Defendants do not offer any evidence to explain why.

In *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003), the Fifth Circuit held that officials' failure to call an ambulance for almost two hours while an unconscious minor attending a youth offender "boot camp" lay unconscious and vomiting rose to the level of deliberate indifference. *Austin*, 328 F.3d at 210. In light of the *Austin* decision, the Court finds Plaintiff has alleged the violation of a clearly established constitutional right against Defendants.

---

[5] A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official " '*refused to treat him*, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The Court also finds there is a genuine issue of material fact as to whether Defendants' actions or omissions were objectively reasonable under the circumstances.  There is a complete failure on the part of Defendants to offer any evidence or otherwise explain to this Court why their conduct may have been reasonable.  Defendants assume facts that are not in evidence and rely heavily on the fact that the medical department was contacted twice.  They contend "the evidence shows that supervisors were aware [of Plaintiff's condition] and called medical."  Citing to TEX. GOV'T CODE §501.059, Defendants argue that:

> Security personnel are not authorized to make medical decisions or treat patients. They can only report problems to the medical department.

Section 501.059 is titled "Screening for and Education Concerning Fetal Alcohol Exposure During Pregnancy," and Defendants fail to explain how this statute applies to the facts of this case.  Even so, Defendants still do not offer any *evidence* to describe their individual positions and job responsibilities or explain to this Court what is the proper procedure and protocol for handling medical emergencies such as this.  There are no affidavits to explain if, when, or how Defendants, individually or collectively, were supposed to respond to or otherwise report Plaintiff's condition to the medical department or other appropriate personnel.  There is simply no evidence before this Court to demonstrate who was ultimately responsible for ensuring that Plaintiff received immediate medical attention.

With respect to Nurse Rodriguez, she does not offer any evidence to explain that the actions *she* took, i.e. requesting security personnel to bring Plaintiff in for an evaluation, were the only actions she was professionally obligated to take or should have taken to ensure that Plaintiff received

appropriate medical attention.[6] The medical call log attached to her affidavit demonstrates that she was well-aware of the severity of Plaintiff's medical condition. Nonetheless, over an hour and a half elapsed from the time she first received a call concerning Plaintiff and when Plaintiff finally arrived at the emergency room.

Given each Defendants' eye-witness or notice of Plaintiff's serious condition, the Court finds there is a material fact issue to whether Defendants' individual or collective response to same was objectively reasonable. The fact of the matter is that Plaintiff was left unconscious, naked, filthy, and vulnerable for over five hours before receiving any medical attention. The Court finds Defendants' alleged failure to take some further action to ensure Plaintiff received needed prompt medical attention was not only unreasonable but unconscionable. *See Austin*, 238 F.3d at 210.

For the foregoing reasons, Defendants' motions for summary judgment that they are entitled to qualified immunity is DENIED (D.E. 44).

ORDERED March 26, 2010.

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE

---

[6] In her sworn affidavit, Rachel Brysch, Cluster Nurse Manager for the John B. Connaly Jr. and William G. McConnell facilities, explains the services provided by UTMB nurses, which include but are not limited to assessing and evaluating the plan of care for patients, identifying patient care needs, assisting in the provision of care during an emergency, coordinating with Security, and providing treatment as necessary. She concludes that Nurse Rodriguez "reasonably discharged duties and responsibilities in the initial care of patient Christopher Shane Childers, reasonably, responsibly and prudently on December 29, 2006." Although she states that Nurse Rodriguez "did not see or assess" Plaintiff on March 11, 2007, the day the events giving rise to this lawsuit occurred, Brysch does not offer any testimony concerning the propriety of Nurse Rodriguez's actions on that day.